THE PEOPLE OF THE STATE OF NEW YORK ex rel. S. J. GROVES & SONS COMPANY, INC., Relator, *v.* JAMES A. HAMILTON, Industrial Commissioner of the State of New York, Respondent.

Third Department, November 27, 1929.

Benj. McClung [Charles B. Sullivan of counsel], for the relator.

Hamilton Ward, Attorney-General [Edward J. Grogan, Jr., of counsel], for the respondent.

HASBROUCK, J. The case comes here on certiorari from a determination of the Industrial Commissioner that the relator comply with the provisions of section 220 of the Labor Law, which directs that eight hours shall constitute a legal day's work for relator's employees.

The Labor Law forbids the employment of labor for more than eight hours for all classes of employees except those engaged in farm and domestic service unless otherwise provided by law. Among the exceptions are " employees engaged in the construction, maintenance and repair of highways and in water-works construction outside the limits of cities and villages." (Labor Law, §§ 3, 220, subd. 4.)

The relator had a contract with the Board of Hudson River Regulating District for the construction of a dam on the Sacandaga river, the purpose of which erection was the control and regulation of river flow, which contract contains a stipulation as provided in section 220. The sole question presented is, what did the Legislature contemplate in the use of the words, " water-works construction? "

When the Legislature has used the words " water works " it has been in relation to the supply of water for domestic and drinking purposes of cities, villages, towns and water supply districts. (Transp. Corp. Law, art. 8; Town Law, §§ 282–285, as amd. by Laws of 1926, chap. 711; Laws of 1927, chap. 70, and Laws of 1928, chap. 439; Village Law, § 221 et seq., as amd. by Laws of 1927, chap. 650, and subsequent statutes; Id. § 237 et seq., as added by Laws of 1927, chap. 333; Conservation Law, §§ 521–524, as amd. by Laws of 1922, chap. 413; Laws of 1926, chap. 648, and Laws of 1928, chap. 242.) Section 524* provides that no water supply system shall be operated until the work has been approved by the

* Renum. from section 523 of the Conservation Law.— [REP.

Commission. This section does not relate to the work of river regulation.

The interpretation required by the law is that of ordinary use of the words "water works" in the communities of the State where water works are located. (Suth. Stat. Const. § 242.)

The language of section 220, subdivision 4, of the Labor Law comprehends only construction of water works outside cities and villages. It is obvious that within the contemplation of the Legislature was only such water works as could be constructed under the law by cities and villages.

What is meant by "stove works," "powder works," "locomotive works," "gas works" are the grounds, buildings, machinery and plant used to produce stoves, powder, locomotives or gas. (*People* v. *Haight*, 54 Hun, 8.)

So "water works" in general parlance, when used by the law-making power, mean the grounds, waters and structures necessary to prepare water for domestic uses and carry and distribute the same.

If the Legislature meant to exempt employees on the river regulating constructions undertaken by the State it could have said so. If the purpose of the framers of the law was to secure exemption under doubtful phraseology the imposition on the public ought not to be encouraged. (Suth. Stat. Const. § 223.)

I am unable to bring myself to believe that the Legislature meant to weaken the general law designed for the protection of labor or to deny the principle involved therein, except for ".water-works" construction as above described outside of cities and villages.

An objection to the interpretation set forth herein is that a violation of the statute under construction creates a penalty and must be construed strictly. The rule upon the subject does not deny that such laws are to be strictly construed but not to defy the lawmakers' intention. In *Johnson* v. *Southern 'Pacific Co.* (196 U. S. 1, 17) Chief Justice FULLER states the rule in these words: "Moreover, it is settled that ' though penal laws are to be construed strictly, yet the intention of the Legislature must govern in the construction of penal as well as other statutes; and they are not to be construed so strictly as to defeat the obvious intention of the Legislature.' " Mr. Justice STORY, quoted by the chief justice, says: "In short, it appears to me, that the proper course in all these cases, is to search out and follow the true intent of the Legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner, the apparent policy and objects of the Legislature." (*United States* v. *Winn*, 3 Sumn. 209; Suth. Stat. Const. § 262.)

Harmony with the context requires that by water works construction outside of cities and villages is meant the same as in cities and villages. The general purpose of the Labor Law is to maintain the eight-hour day for labor. Any departure or exception should be strictly construed. (Suth. Stat. Const. § 223.)

We conclude that the Legislature did not intend when it used the words " water-works construction " to include " river regulating works " construction.

The decision of the Industrial Commissioner should be confirmed, with costs.

DAVIS and WHITMYER, JJ., concur; VAN KIRK, P. J., dissents, with a memorandum, in which HINMAN, J., concurs.

VAN KIRK, P. J. (dissenting). A violation of the provisions of section 220 of the Labor Law (as amd. by Laws of 1927, chaps. 166, 563) is a misdemeanor punishable by fine and imprisonment (Subd. 9); the section should be strictly construed and not extended by implication or construction beyond its terms when fairly interpreted. (*People* v. *Rosenberg*, 138 N. Y. 410, 415; *Wood* v. *Erie R. Co.*, 72 id. 196, 198.)

This section, subdivision 2, covers contracts to which the State, or a municipal corporation, or a commission appointed pursuant to law, is a party and limits the number of hours which shall constitute a day's work for men employed under such contracts. Subdivision 4, paragraph d, excludes from that limitation employees engaged in highway and water works construction outside the limits of cities and villages. The exclusion in paragraph d applies with equal and like force to highway construction and water works construction. This is made evident by the amendment to this paragraph by section 8 of chapter 642 of the Laws of 1921. Prior to that amendment this paragraph read as it does to-day excepting that it did not contain the words " and in water-works construction." The amendment simply inserted these four words, without other change, even in punctuation. The words " outside the limits of cities and villages " have the same relation to water works construction that they have to highway construction. Highway construction and water works construction are alike important public works the quick completion of which is generally of great importance to the convenience and welfare of the public. It was the intent of the Legislature to place them on a like footing in respect to the employment of labor for construction. This is emphasized in subdivision 2, which declares an exception to the stipulations in the contract as to hours of labor in these words: " Except in cases of extraordinary emergency caused by fire, flood or danger to life

or property." That the Sacandaga project, so called, is of great public interest for the convenience, health and welfare of the public appears in *Hudson River R. Dist.* v. *F., J. & G. R. R. Co.* (223 App. Div. 358; modified, 249 N. Y. 445). The public benefits to be derived from this work are "municipal water supply" and "public welfare, including public health and safety."* When completed it will reduce the spring flood conditions which often pollute municipal water supplies and cause typhoid epidemics in cities along the river through the flooding of sewers and cellars of residential, hotel and business property; also it sustains during dry seasons a water supply for useful purposes. It is essential that the work be finished before next spring if possible. The case presents an emergency "caused by * * * danger to life or property" within the meaning of the exception just quoted from the Labor Law. The location of the work brings it within the purpose of the Legislature in excluding workmen engaged in highway or waterworks construction from the restrictions of subdivision 2. It is far from any center of population and where labor is likely to be scarce. The Sacandaga project is a water works construction within the definition in Webster's New International Dictionary, as follows: "2. chiefly pl., a hydraulic apparatus or a system of works or fixtures by which a supply of water is furnished for useful or ornamental purposes, including dams, sluices, pumps, aqueducts, distributing pipes, fountains, etc." In my view this project is a water works construction within that definition and likewise within the intent and meaning of the Legislature when it enacted section 220. While the legislative leaders may not have had in mind public works under the River Regulating Act, this particular work is one which comes exactly within the purposes which induced the legislation, and the construction of the statute above suggested will interfere with no rights of labor which section 220 was intended to protect; employees engaged on the work will get all of the earnings of labor, though these earnings in some cases may be less widely distributed.

I think the determination should be annulled.

Hinman, J., concurs.

Determination confirmed, with fifty dollars costs and disbursements.

---

* See Conservation Law, § 430, subd. 3, as added by Laws of 1915, chap. 662; Id. § 431, added by Laws of 1915, chap. 662, as amd. by Laws of 1920, chap. 463; Id. art. 7, as amd. by Laws of 1928, chap. 242.— [Rep.