[No. 298-41121-1.    Division One.    June 22, 1970.]
Panel 2

THE STATE OF WASHINGTON, *Respondent*, v. TOMMY SYKES, JR., *Appellant*.

*Bovy, Graham, Cohen & Wampold* and *Thomas S. Wampold,* for appellant (appointed counsel for appeal).

*Charles O. Carroll, Prosecuting Attorney,* and *Robert S. Bryan, Deputy,* for respondent.

UTTER, J.—The Seattle Community College was burglarized on January 25, 1969. Two policemen, Officers Brown and Aardahl, responding to a call, observed three boys inside the school at two different times. Two were arrested inside the building and the defendant, Tommy Sykes, Jr., was arrested later. Sykes was convicted of burglary in the second degree and appeals his conviction.

Error is assigned to the court's failure to suppress eyewitness identification, alleged misconduct of the prosecutor, and also to instructions dealing with the effect of a presumption of intent and with the credibility of witnesses. Sykes also alleges the court erred in failing to grant a new trial on the grounds substantial justice had not been done.

On the night of the arrest, Officer Brown observed the three defendants first, face-to-face, at a range of 4 feet and also observed them a short time later for 4 or 5 seconds at a greater distance. Officer Aardahl also observed the defendants first, at a range of 4 feet for 2 or 3 seconds, and then for a longer period at a greater range. Light conditions were favorable and the officers testified at trial, based on their observation at the community college, they were able to make positive in-court identification of Sykes.

The morning after the burglary, the two officers were shown 10 photos of other males of the same race. They both, outside the presence of each other, after examining the pictures in a different order, picked Sykes as the third man.

Sykes claims the court should have suppressed all evidence of identification inasmuch as the method for the selection of Sykes' photograph was unfair and, even though he was not under arrest, the state should have provided counsel to be present at the time the photographs were observed by Officers Brown and Aardahl.

Sykes' claim of error is not well-founded. The evidence indicates the courtroom identification of him by Officers Aardahl and Brown was independent of and untainted by prior photographic identification. *State v. Kearney*, 75 Wn.2d 168, 449 P.2d 400 (1969); *State v. Gefeller*,

76 Wn.2d 449, 458 P.2d 17 (1969); *State v. Standley*, 1 Wn. App. 148, 459 P.2d 808 (1969).

Even if Sykes' assertion is correct that the identification was based on pretrial identification by photograph, the photographic identification procedure violates due process only if it is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Prater*, 1 Wn. App. 342, 461 P.2d 357 (1969). In determining whether due process was violated, each case must be considered on its own facts. The procedures used by the officers, as previously set out, were consistent with due process and Sykes was not prejudiced.

The contention that the identification testimony should have been suppressed inasmuch as Sykes was unrepresented by counsel at the photographic identification procedure was rejected in *State v. Grays*, 1 Wn. App. 422, 424, 463 P.2d 182 (1969). No authority has been cited which would now compel a different result.

■ Sykes claims he was substantially prejudiced by remarks of the deputy prosecutor in the presence of the jury. These remarks, it is alleged, suggested the jurors would have to decide the police officers were lying if an adverse verdict was rendered. Sykes also claims to have been prejudiced by the deputy prosecutor's use of the term "we" in referring to presentation of the case. No objection was made to these remarks and counsel thereby waived his right to present this question on appeal. *State v. Van Auken*, 77 W.D.2d 132, 139, 140, 460 P.2d 277 (1969). The court may ignore this failure to object only if it can say the alleged misconduct is so inflammatory or persistently prejudicial as to be incurable by admonition from the trial court or so flagrant as to deny the accused due process. *State v. Gefeller, supra*. There is no indication in Sykes' brief that the error, if any, was this aggravated and we cannot conclude, from our examination of the record, that it is.

The court instructed the jury:

Every person who, with intent *to commit some crime therein*, shall break and enter any building, or part thereof, not being lawfully owned or occupied by said person, wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree.

Every person who shall unlawfully break and enter any such building shall be deemed to have broken and entered the same with *intent* to commit a crime therein, unless such unlawful breaking and entering shall be explained by testimony satisfactory to the jury to have been made without criminal intent.

(Instruction No. 4. Italics ours.)

■ Sykes' entire defense was based upon an alibi and the existence of intent to commit a crime by whoever entered the building was not a disputed issue in the trial. In his closing argument, counsel for Sykes said, "There is no question that whoever broke in tried to commit a crime, and that it took place in King County." If error was committed by instructing on the presumption of intent, in light of counsel's statements, it was harmless error. The court is able to say there is no reasonable possibility the evidence complained of might have contributed to the conviction. *State v. Johnson*, 1 Wn. App. 553, 463 P.2d 205 (1969); *State v. Jefferson*, 74 Wn.2d 787, 793, 446 P.2d 971 (1968).

■ Giving this instruction, for the reason stated, could not be error in this case. However, the current state of the law regarding the constitutionality of statutory presumptions is in a state of change and the propriety of the instruction, as given, may be subject to question.

In examining this particular instruction, the issue of the necessary existence of a rational connection between the fact to be proved of breaking and entering and the fact presumed of criminal intent was conceded by counsel in oral argument in this case. *Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969). There also appears to be no serious dispute about the statutory presumption here involved satisfying the "comparative convenience test." *State v. Palmer*, 2 Wn. App. 863, 471 P.2d 118

(1970); *Leary v. United States, supra; Tot v. United States,* 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241 (1943). It is apparent that a person who has broken and entered a building is in a far more favorable position to explain his intention than the state.

There is language used in the instruction, however, which does raise serious questions. The wording of this particular statutory presumption which presumes intent, unless breaking and entry is explained "by testimony satisfactory to the jury to have been made without criminal intent," differs radically from that used in *Palmer,* which merely stated possession was prima facie evidence of a requisite intent. *Palmer* explained the meaning of the word "prima facie" in such a way that it could be said not to infer the defendant was either compelled to testify in a matter which would violate his Fifth Amendment rights or be a comment on the defendant's failure to testify. However, the phrase "unless the defendant explains to the satisfaction of the jury" could be said to give a different impression to a jury although they were instructed, as they were in this case, that the state had the burden of proof on all the elements beyond a reasonable doubt and that the presumption of innocence of the defendant carried throughout the entire trial. *See United States v. Gainey,* 380 U.S. 63, 13 L. Ed. 2d 658, 85 S. Ct. 754 (1965) (Black, J., dissenting). The impact of this same phrase has also been questioned as a possible comment on the failure of the accused to testify. *United States v. Gainey, supra,* (Douglas, J., dissenting in part).

The Fifth Amendment argument was rejected by the Supreme Court in *Yee Hem v. United States,* 268 U.S. 178, 69 L. Ed. 904, 45 S. Ct. 470 (1925), and the comments of Justice Black have not yet been adopted as expressing the views of the majority of the court. The argument that the instruction was a comment on the defendant's failure to testify was rejected by the majority opinion in *Gainey.* However, in *Gainey,* the majority indicated that rather than instruct in the words of the statute, it would be a

better practice to say "unless the evidence in the case provides a satisfactory explanation." There would, thereby, be no doubt that the evidence in support of the defendant did not necessarily need to come from his own lips, and the possibility of the instruction being construed as a comment on the failure of the accused to testify would be removed.

Sykes urges the jury should not be instructed that there is a presumption and that even if they are, the court must then go further and instruct the presumption is not binding and that there is still an issue of intent for their determination.

*State v. Durning,* 71 Wn.2d 675, 430 P.2d 546 (1967), decided after *Gainey* but before *Leary,* concludes the statutory language used in this instruction does not advise the jury the presumption of intent from unlawful entry is conclusive and that an instruction in the language of the statute is sufficient to inform the jury that the presumption is rebuttable. Although *Durning* answers the questions raised by Sykes, it does not go to the arguments raised in *Gainey* and it would appear to be better practice not to instruct the jury in the language of the statute and to instruct the jury, as was suggested in *Gainey,* that the jurors may draw the inference of intent unless the evidence in the case provides a satisfactory explanation otherwise.

■ The court gave an instruction relating to credibility of the witness.[1] Sykes attacks that part of the instruction

---

[1] "You are the sole and exclusive judges of the evidence and of the credibility of the several witnesses and of the weight to be attached to the testimony of each. In weighing the testimony of a witness you have a right to consider his demeanor upon the witness stand, the apparent fairness or lack of fairness, the apparent candor or lack of candor of such witness, the reasonableness or unreasonableness of the testimony such witness relates and the interest, if any, you may believe a witness feels in the result of the trial, and any other fact or circumstance arising from the evidence which appeals to your judgment as in anywise effecting the credibility of such witness, and to give to the testimony of the several witnesses just such degree of weight as in your judgment it is entitled to.

You will be slow to believe that any witness has testified falsely in the case, but if you do believe that any witness has willfully testified falsely as to any material matter, then you are at liberty to disregard the testimony of such witness entirely except insofar as the same may be corroborated by other credible evidence in the case."

which states the jury may consider:

> the interest, if any, you may believe a witness feels in the result of the trial, and any other fact or circumstance arising from the evidence which appeals to your judgment as in anywise effecting the credibility of such witness . . .

He alleges this is a comment on the evidence and improperly singles out the defendant. *State v. Bester,* 167 N.W.2d 705 (Iowa 1969). The court, in *Bester,* gave a general credibility instruction and also another instruction stating the jury was "not required to receive the testimony of the defendant as true . . ."

The same criticism does not apply to the challenged instruction in this case. The instruction applies with equal force to the state's witnesses as well as the defendant's, as it may be said the police officers have an interest in sustaining the validity of any arrest they make inasmuch as they may be potential defendants in a wrongful arrest suit. The instruction given here did not contain the same vice criticized in *Bester* and was proper.

Sykes finally urges the court erred in failing to grant a new trial on the grounds that substantial justice had not been done. The sole criteria for appellate review of a conviction in a criminal case is whether the verdict is supported by substantial competent evidence. If it is, the verdict must stand. There is substantial evidence in this case to support the verdict of the jury and the assignment of error is not well taken.

The judgment is affirmed.

HOROWITZ, A. C. J., and WILLIAMS, J., concur.